IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>LEE STURGELL,<br>      Defendant. | CRIMINAL ACTION<br>NO. 15-120 |

**OPINION**

**Slomsky, J.**                                        May 3, 2021

### I.  INTRODUCTION

Pro se Defendant Lee Sturgell, who is serving a 132-month sentence, moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (Doc. No. 67.) In his Motion, Defendant asks the Court to "reduc[e] his sentence to time served based on 'extraordinary and compelling reasons'" under the First Step Act. (Id. at 1.) He states that he suffers from "serious documented medical conditions" and "has contracted COVID-19 long-term symptoms" due to "the Bureau of Prison's (BOP['s]) incompetence and/or negligence[.]" (Id.) Defendant also contends that the "relevant § 3553(a) sentencing factors warrant reducing [his] sentence to time served." (Id.)

The Government opposes Defendant's Motion, citing the severity of Defendant's underlying offenses, his ability to manage his medical conditions while incarcerated, his service of less than one-half of his sentence, his lack of remorse for his crimes, and the fact that he will soon receive his second dose of the COVID-19 vaccine. (See Doc. No. 69 at 5-6.)

For reasons that follow, Defendant's Motion (Doc. No. 67) will be denied.

## II. BACKGROUND

### A. Defendant's Criminal History

Defendant is presently incarcerated at the Federal Correctional Institution ("FCI") in Fort Dix, New Jersey for possession, receipt, and distribution of child pornography. (See Doc. No. 69 at 1.) In December 2013, an undercover detective downloaded 858 images and videos of child pornography received from Defendant through the file-sharing website Bit Torrent. (See id. at 1-2.) Thereafter, detectives executed a search warrant on Defendant's home on January 29, 2014, in which they found and seized Defendant's computer and two external hard drives. (See id. at 2.) During the search, Defendant admitted to detectives that "the seized computer equipment belonged to him and that he had used the Bit Torrent program to download child pornography." (Id.)

A search of the contents of the seized items "confirmed that [D]efendant downloaded and collected child pornography continuously in excess of at least 10 years." (Id.) Over 60,000 images and videos depicting child pornography were found. (See id.) The search also revealed that Defendant "visited multiple peer-to-peer sites that are geared toward child pornography, and searched the Internet for child-related material[.]" (Id. at 3.)

On March 25, 2015, Defendant was indicted and charged with possession, receipt, and distribution of child pornography, in violation of 18 U.S.C. § 2252(a). (See id.; Doc. No. 1.) On May 23, 2016, Defendant pled guilty to all charges. (See Doc. Nos. 29; 69 at 3.) On February 24, 2017, the Court revoked Defendant's bail based on his violation of pretrial release conditions[1] and

---

[1] Specifically, Defendant violated the conditions of his pretrial release "by his: (1) prohibited use of a smartphone which was unmonitored and concealed from [Pretrial Services ("PTS")], (2) unauthorized and concealed access [to] the Internet, . . . (3) establishment of multiple email accounts and cell phone apps, all of which were prohibited by the conditions of his release and concealed from PTS, (4) unauthorized creation of online cloud storage accounts, and (5) unauthorized creation of a hidden app on his unauthorized cell phone just two days before his guilty plea was entered, in which he concealed files from view on his phone . . . ." (Doc. No. 69 at 3-4) (footnote omitted).

remanded him to the custody of the United States Marshal pending sentencing. (See Doc. Nos. 46; 69 at 4.) On March 7, 2017, the Court sentenced Defendant to a total term of 132 months' incarceration followed by 10 years' supervised release. (See Doc. Nos. 49 at 2-3; 69 at 4.)

To date, Defendant has served approximately 49 months of his sentence and has earned approximately 7 months' credit for good conduct. (See Doc. No. 69 at 5.) With good time credit, his anticipated release date is July 9, 2026. (See id. at 4.)

### B. Defendant's Pro Se Motion for Compassionate Release

On March 15, 2021, Defendant filed the instant pro se Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 67.) In the Motion, Defendant states that he suffers from "chronic GERD,[2] Hyperlipidemia,[3] Vitamin D [d]eficiency, Anemia and chronic pain in both ankles." (Id. at 1.) He also claims he "has contracted COVID-19 Long-Term Symptoms such as Loss of Smell, Shortness of Breath, Fatigue, Heart Irregularities and Blurred Vision" due to the BOP's "incompetence and/or negligence[.]" (Id.) Defendant contends that his COVID-19 symptoms "constitute extraordinary and compelling reasons for compassionate release[,]" and "in combination with his underlying medical conditions, . . . his release is consistent with the policy of the Sentencing Commission." (Id. at 4.) Moreover, he claims that FCI Fort Dix "has handled the COVID-19 Pandemic worse than perhaps any facility in the entire country" and it "is currently experiencing an uncontrolled outbreak of COVID-19." (Id. at 6.)

---

[2] "GERD (also known as acid reflux) is a condition where stomach acid flows back into the tube connecting the mouth and stomach (esophagus), which can lead to irritation of the lining of the esophagus." (Doc. No. 69 at 6 n.4.)

[3] The Society for Vascular Surgery describes hyperlipidemia as an "umbrella term" that describes conditions with elevated levels of lipids—fats, cholesterol, and triglycerides—in a person's blood. See Gregory Moneta, Hyperlipidemia, SOCIETY FOR VASCULAR SURGERY (last accessed Apr. 14, 2021), https://vascular.org/patients/vascular-conditions/hyperlipidemia.

3

Regarding the § 3553(a) sentencing factors, Defendant notes that he has served four years of his sentence. (Id. at 10.) For this reason, he believes "[a] reduction in his sentence would still be sufficient to reflect the seriousness of his crimes, protect the public, and afford adequate deterrence, while allowing [him] to self-isolate at home, preserving his health and in time allowing him to return to gainful employment." (Id. at 10-11.) He asserts that his employment within FCI Fort Dix as a Factory Manager and his participation in college classes "demonstrate how he reshaped his life and aspires to be a productive, law-abiding member of his community when he returns home." (Id. at 12.) Lastly, he believes he "poses no threat to the community upon release" because he has had "no disciplinary incident[s] during his term of incarceration." (Id. at 13.)

### C. The Government's Response in Opposition to Defendant's Motion

On April 12, 2021, the Government filed a Response in Opposition to Defendant's Motion. (Doc. No. 69.) In its Response, the Government argues that Defendant's Motion should be denied because "he is being vaccinated against COVID-19, has recovered from the virus, and does not present a risk factor for serious disease in any event." (Id. at 1.) "Moreover, denial is also warranted . . . given the circumstances of the defendant's child sex offenses and his ongoing danger to the community." (Id.)

Regarding Defendant's medical conditions, the Government attached his sealed medical records to its Response which confirm the conditions he describes. (See id. at 5-6.) But the Government notes that "[a]ll of these conditions appear well-controlled at this time with medication and treatment provided by the institution." (Id. at 6; Doc. No. 70 at 27-30.) Contrary to Defendant's assertion, the Government states that he "contracted COVID-19 on December 18, 2020[] and suffered virtually no symptoms associated with the illness." (Doc. No. 69 at 6; see also Doc. No. 70 at 7, 50.) "As of December 29, 2021, he was still asymptomatic and was discharged from daily monitoring." (Doc. No. 69 at 6; see also Doc. No. 70 at 7, 44.)

4

Notably, Defendant's medical records also show that he "received the first dose of the Pfizer [COVID-19] vaccine" on March 24, 2021 and "will receive the second dose in the upcoming days, on the appropriate schedule." (Doc. No. 69 at 6; see also Doc. No. 70 at 55.) The Government therefore argues that Defendant does not "present any extraordinary and compelling reason allowing compassionate release[] because he is being vaccinated." (Doc. No. 69 at 16.) While "an unvaccinated inmate who presents a risk factor identified by the [Centers for Disease Control and Prevention ("CDC")]" presents an extraordinary and compelling reason, "[n]one of Sturgell's conditions appear on the CDC list." (Id. at 16, 24.) And due to Defendant's vaccination, no extraordinary and compelling reason "exist[s] in this case." (Id.)

As for the § 3553(a) sentencing factors, the Government submits that "[t]he circumstances of . . . [D]efendant's crimes and the ongoing danger he presents to the community all warrant his continued detention." (Id. at 25.) Defendant "trafficked in thousands of images and videos of some of the most horrific sexual exploitation of children" and "continued to involve himself in child exploitation even after he was indicted[,] . . . he entered pleas of guilty, and while he was under court supervision[,]" which he subsequently violated. (Id. at 25-26.) The Government further notes that "to this day he fails to recognize the seriousness of his crimes, the trauma his crimes caused to his child victims, and the danger he poses to those in the community." (Id. at 26.) In fact, "[t]he victims of [D]efendant Sturgell's crimes were notified – as they are required to be, under the law – and one child submitted a letter urging this Court not to release [him] or reduce his sentence in any way." (Id. at 28.)

5

## III. DISCUSSION

### A. The Analytical Framework Regarding Motions for Compassionate Release Pursuant to § 3582(c)

Generally, a district court "may not modify a term of imprisonment once it has been imposed . . . ." 18 U.S.C. § 3582(c). There are, however, "a few narrow exceptions" to this general "rule of finality[,]" Freeman v. United States, 564 U.S. 522, 526 (2011), including the compassionate release statute, § 3582(c)(1)(A). As amended by the recently enacted First Step Act, § 3582(c)(1)(A) empowers a district court to modify a term of imprisonment on a defendant's motion after the defendant has exhausted his administrative remedies.[4] See § 3582(c)(1)(A)(i). The statute provides, in part, that a court:

> [M]ay reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [§ 3553(a)] to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

---

[4] A defendant may file a motion for compassionate release directly with a district court after he "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A). In other words, before a defendant can make such a request to the court, he "must at least ask the Bureau of Prisons (BOP) to do so on [his] behalf and give [the] BOP thirty days to respond[,]" United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020), and if the BOP does respond adversely within the thirty days, to then exhaust any available administrative appeals during that period. See § 3582(c)(1)(A).

Here, Defendant has met the exhaustion requirement before filing his Motion. On February 1, 2021, Defendant sent a request for compassionate release to the Warden at FCI Fort Dix. (See Doc. No. 67 at 15.) On March 15, 2021, over thirty days after Defendant submitted the request, he filed the instant Motion for Compassionate Release. (See id. at 2.) Because over thirty days have elapsed from the date of Defendant's request and the filing of the instant Motion, he has met the exhaustion requirement.

§ 3582(c)(1)(A). Congress, however, has not defined the term "extraordinary and compelling reasons," except to the extent that "[r]ehabilitation of the defendant alone" is insufficient to constitute an extraordinary and compelling reason. 28 U.S.C. § 994(t). Instead, Congress delegated the authority to define "extraordinary and compelling reasons" to the United States Sentencing Commission. Section 1B1.13 of the Sentencing Guidelines explains that a sentence reduction under § 3582(c)(1)(A) may be ordered where a court determines:

> [A]fter considering the factors set forth in 18 U.S.C. § 3553(a), . . . that—
>
> (1) (A) Extraordinary and compelling reasons warrant the reduction; . . .
>
> (2) the defendant is not a danger to the safety or any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

Application Note 1 to section 1B1.13 discusses the meaning of "extraordinary and compelling reasons," and lists three specific qualifying circumstances: (1) a defendant's medical condition, (2) age, or (3) family circumstances. § 1B1.13 n.1(A)-(C). This Note states:

> Provided the defendant [is not a danger to the safety of any person or to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

7

(ii) The defendant is—

    (I) suffering from a serious physical or mental condition,

    (II) suffering from a serious functional or cognitive impairment, or

    (III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant. The defendant

    (i) is at least 65 years old;

    (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and

    (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family circumstances.

    (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

§ 1B1.13 n.1(A)-(C). Application Note 1 further provides a "catch-all" provision, which allows a court to modify a sentence for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)." § 1B1.13 n.1(D).[5]

---

[5] Although by its express language section 1B1.13 applies to motions brought by the Director of the BOP, the current consensus is that the First Step Act removed this requirement. See generally United States v. Rodriguez, 451 F. Supp. 3d 392, 398 (E.D. Pa. 2020) (considering

The Application Notes only provide "helpful guidance" and are "not ultimately conclusive . . . ." United States v. Rodriguez, 451 F. Supp. 3d 392, 398 (E.D. Pa. 2020) (quoting United States v. Fox, No. 14-03, 2019 U.S. Dist. LEXIS 115388, at *5 (D. Me. July 11, 2019)). Since the Sentencing Commission has not yet amended section 1B1.13 or its commentary to account for the First Step Act, a district court has the authority to independently assess whether there are extraordinary and compelling reasons warranting a sentence reduction under § 3582(c)(1)(A). See Rodriguez, 451 F. Supp. 3d at 395.

In general, however, "[i]n the context of the current global pandemic, [c]ourts around the country have [only] granted compassionate release where the defendant suffers from a serious condition that increases the likelihood of severe consequences from COVID-19." United States v. Somerville, 463 F. Supp. 3d 585, 596 (W.D. Pa. 2020) (internal quotation omitted) (quoting United States v. Brooks, No. 07-20047, 2020 U.S. Dist. LEXIS 85671, at *14 (C.D. Ill. May 15, 2020)). In the Third Circuit, this means that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020). In addition, "[m]ost, though not all, of the cases where compassionate release has been granted also involved some showing that COVID-19 is actually present, usually to a significant degree, in the facility where the prisoner is incarcerated." Somerville, 463 F. Supp. 3d at 596. Thus, "a prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a uniquely high risk of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is

---

whether a defendant bringing a direct-to-court motion for compassionate release demonstrated "extraordinary and compelling reasons" and using § 1B1.13 as "helpful guidance.").

held." Id. at 596-97.

If a district court determines that an extraordinary and compelling reason exists, it must then weigh that reason against the § 3553(a) factors to determine if a sentence reduction is warranted and, if so, the extent of such reduction. See id. at 588 ("[T]he Court must weigh [the] extraordinary circumstances against the ordinary sentencing factors under 18 U.S.C. § 3553(a)."). Section 3553(a) establishes factors for a court to consider in initially imposing a sentence. Not every factor is applicable, however, when considering a motion for compassionate release. In the instant case, the applicable factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]
>
> . . . [and]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

§ 3553(a)(1)-(2), (6). Therefore, if a balance of a defendant's extraordinary and compelling reasons with the § 3553(a) factors support a reduced sentence, and that reduction is consistent with applicable policy statements of the Sentencing Commission, a court may reduce a defendant's prison term, modify the terms of supervised release, or both.

## B. Defendant's Motion for Compassionate Release Will Be Denied

Defendant's Motion will be denied because neither his medical conditions nor his prior COVID-19 diagnosis present an extraordinary and compelling reason for his release. Further, the relevant § 3553(a) factors weigh against a reduction or modification of his sentence.[6] Each of these conclusions is discussed seriatim.

### 1. Defendant Has Not Shown an Extraordinary and Compelling Reason for His Release

To begin with, none of Defendant's medical conditions present an extraordinary and compelling reason for his release. Defendant states that he suffers from "chronic GERD, Hyperlipidemia, Vitamin D [d]eficiency, Anemia and chronic pain in both ankles." (Doc. No. 67 at 1.) He also claims that his prior COVID-19 diagnosis resulted in "Long-Term Symptoms such as Loss of Smell, Shortness of Breath, Fatigue, Heart Irregularities and Blurred Vision." (Id.) In its Response in Opposition, the Government notes that Defendant does not have any medical conditions "identified by the CDC as presenting the risk of severe illness[,]" and the conditions he does have "appear well-controlled at this time with medication and treatment provided by the institution." (Doc. No. 69 at 6, 24.) As for the prior COVID-19 diagnosis, the Government submits that Defendant "suffered virtually no symptoms associated with the illness[,]" he "received the first dose of the Pfizer vaccine" on March 24, 2021, and "he will receive the second dose in the upcoming days, on the appropriate schedule." (Id. at 6.)

The Government is correct in noting that the CDC has not classified chronic GERD, Hyperlipidemia, Vitamin D deficiency, Anemia, or chronic pain as COVID-19 risk factors. See People with Certain Medical Conditions, CENTERS FOR DISEASE CONTROL AND PREVENTION (Mar.

---

[6] Because the Court will deny Defendant's Motion for the reasons given, it is not necessary to determine whether a reduction in Defendant's sentence would be consistent with applicable policy statements of the Sentencing Commission.

11

29, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Additionally, Defendant's conditions appear to be appropriately managed through medication and treatment (see Doc. No. 70 at 27-30), and Defendant does not show how these conditions would increase his risk of severe illness if he were to be re-infected with COVID-19.[7] For these reasons, Defendant's medical conditions are not extraordinary and compelling reasons for his release.[8]

Defendant's prior COVID-19 diagnosis also does not present an extraordinary and compelling reason for his release.[9] On December 18, 2020, Defendant tested positive for COVID-19. (See Doc. Nos. 69 at 6; 70 at 7, 50.) Contrary to Defendant's assertions of suffering from "long-haul" symptoms, his medical records show that he denied having any symptoms. (See Doc.

---

[7] Despite Defendant's assertion in his Motion that FCI Fort Dix "is currently experiencing an uncontrolled outbreak of COVID-19" (Doc. No. 67 at 6), no actual, non-speculative risk of contracting COVID-19 at FCI Fort Dix presently exists. The Government concedes that FCI Fort Dix did suffer a COVID-19 outbreak in October 2020 that "ultimately affect[ed] more than half of the institution." (Doc. No. 69 at 14.) However, "[a]t present, there is only one reported positive inmate case in the institution out of a total of 2,782 inmates, and a total of 1,810 current inmates are deemed recovered – including th[e] [D]efendant, Lee Sturgell." (Id.); see also COVID-19 Cases, FEDERAL BUREAU OF PRISONS (Apr. 30, 2021), https://www.bop.gov/coronavirus/. Based on this information, COVID-19 is no longer present to a significant degree at FCI Fort Dix.

[8] See United States v. Moldover, No. 14-637, 2020 WL 6731111, at *10 (E.D. Pa. Nov. 13, 2020) ("Defendant's . . . hyperlipidemia . . . do[es] not present [an] extraordinary and compelling reason[] justifying his release. The CDC has not classified Defendant's . . . condition[] as either [an] actual or potential COVID-19 risk factor[]."); United States v. Moses, No. 14-232, 2020 WL 5117978, at *2, *5 (E.D. Pa. Aug. 31, 2020) (holding that the defendant's anemia, Vitamin B and D deficiency, and other medical conditions did not constitute an extraordinary and compelling reason for release).

[9] See United States v. Pray, No. 14-55-1, 2021 WL 965318, at *3 (E.D. Pa. Mar. 15, 2021) ("Pray's previous experience with COVID-19 does not present an extraordinary and compelling reason for his release . . . ."); United States v. Moore, No. 18-474, 2021 WL 308331, at *2 (E.D. Pa. Jan. 29, 2021) (collecting cases); United States v. Anico, No. 19-86, 2020 WL 5407913, at *4 (E.D. Pa. Sept. 9, 2020) (collecting cases).

No. 70 at 7.) Most importantly, Defendant has already received the first dose of the Pfizer COVID-19 vaccine and is scheduled to receive a second dose.[10]  (See id. at 55; Doc. No. 69 at 6.)

Accordingly, Defendant has not presented any extraordinary and compelling reasons to justify granting his Motion for Compassionate Release.[11]

### 2. The § 3553(a) Sentencing Factors Do Not Weigh in Favor of Defendant's Release

The relevant § 3553(a) factors also weigh against granting Defendant compassionate release.  First, the Court has examined the nature and circumstances of the offense and Defendant's history and characteristics.  See § 3553(a)(1).  Defendant is presently incarcerated for possession, distribution, and receipt of child pornography.  (See Doc. Nos. 49 at 1-2; 69 at 1.)  Defendant states that "by the BOP's own calculations, he presents an extremely low recidivism risk" (Doc. No. 67 at 13); however, the Government notes that he "trafficked in thousands of images and videos of

---

[10] Indeed, courts in this district have denied compassionate release, in part, because the defendant had been—or would soon be—vaccinated against COVID-19.  See United States v. Limehouse, No. 08-0223-1, 2021 WL 1387756, at *6 (E.D. Pa. Apr. 13, 2021) ("FCI Cumberland is . . . in the process now of inoculating both its staff members and its inmate population with the COVID-19 vaccines."); United States v. Slone, No. 16-400, 2021 WL 1374634, at *1 (E.D. Pa. Apr. 12, 2021) ("To the extent Mr. Slone believes his asthma puts him at risk for COVID-19, the risk is mitigated having received two doses of the effective Moderna [COVID-19] vaccine and he otherwise does not present health concerns rising to the level of extraordinary and compelling reasons for release."); United States v. Roper, No. 16-335, 2021 WL 963583, at *4 (E.D. Pa. Mar. 15, 2021) ("[T]he [BOP] medical staff is actively treating and successfully managing Mr. Roper's conditions, and, perhaps most importantly, the Bureau provided the first of two vaccination shots several weeks ago and no one suggests delay in the second shot.  Mr. Roper does not present an extraordinary and compelling reason for his release."); United States v. Ulmer, No. 18-00579-3, 2021 WL 844579, at *3 (E.D. Pa. Mar. 5, 2021) ("Ulmer's request for compassionate release has no merit in fact or law.  He presents minor health concerns and his recovery from COVID-19 and vaccination significantly outweigh any issues at FPC Lewisburg.").

[11] Defendant is 56 years old.  (See Doc. No. 69 at 5.)  He does not suffer from a terminal illness or a serious cognitive impairment, and he is not a caregiver to minor children.  See § 1B1.13 n.1(A)-(C).  Thus, the factors listed in the Sentencing Guideline Manual, see § 1B1.13 n.1(A)-(C) are not relevant here.

some of the most horrific sexual exploitation of children" and "did so for decades, by his own admission[,] for the last 40 years." (Doc. No. 69 at 25.) Moreover, "[h]e continued to involve himself in child exploitation even after he was indicted and he entered pleas of guilty, and while he was under court supervision." (Id. at 25-26.) He violated the conditions of his release and was placed in custody pending sentencing. (See id. at 4.)

The United States Supreme Court has commented on the severity of child pornography offenses, stating that "[c]hild pornography harms and debases the most defenseless of our citizens." United States v. Williams, 553 U.S. 285, 307 (2008). Likewise, the Third Circuit Court of Appeals has noted that "congressional findings . . . repeatedly stress that child pornography 'is a form of sexual abuse which can result in physical or psychological harm, or both, to the children involved.'" United States v. MacEwan, 445 F.3d 237, 249 (3d Cir. 2006) (citation omitted). "[T]he mere existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children." Id. at 250 (internal quotations and citation omitted). Although Defendant states he "has prove[n], time and time again, that he has no desire to resume any form of criminal activity" (Doc. No. 67 at 13), given the nature and circumstances of the underlying offenses, there is no assurance that he would refrain from criminal activity if he were released.

The Court has also considered whether Defendant's release would reflect the seriousness of the offenses, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from further crimes by him. See § 3553(a)(2)(A)-(C). Defendant has served less than one-half of his 132-month sentence. (See Doc. No. 69 at 28.) The magnitude of

Defendant's crimes warrant the sentence he received.[12]  Despite Defendant's contentions that he "poses no threat to the community upon release" (Doc. No. 67 at 13), the Government believes "he fails to recognize the seriousness of his crimes" as he allegedly "explained that trafficking in child pornography was a 'victimless' crime that allowed him to have a 'release.'" (Doc. No. 69 at 2, 26; see also id. at 26 n.9.)  Therefore, Defendant's release at this point would neither reflect the seriousness of his offenses, promote respect for the law, provide just punishment, afford adequate deterrence, nor protect the public from further crimes he may commit.

Finally, the Court has considered the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.  See § 3553(a)(6).  Defendant received a 132-month sentence, below the range set by the Sentencing Guidelines which Congress created to address sentencing disparities.  The sentencing range was 151 to 188 months' imprisonment.  (See Doc. No. 63 at 73:1-2.)  To reduce Defendant's sentence further would not reflect the Sentencing Commission's goal of avoiding unwarranted sentence disparities among similarly situated defendants and ensuring consistent punishment for similar offenses.  Therefore, none of the applicable § 3553(a) factors favor Defendant's release.

---

[12] In United States v. Pawlowski, 967 F.3d 327, 331 (3d Cir. 2020), the Third Circuit held the following regarding 18 U.S.C. § 3582(c)(1)(A) and its requirement that a court reviewing a motion for compassionate release consider the § 3553(a) factors to the extent they are applicable:

> Because a defendant's sentence reflects the sentencing judge's view of the § 3553(a) factors at the time of sentencing, the time remaining in that sentence may—along with the circumstances underlying the motion for compassionate release and the need to avoid unwarranted disparities among similarly situated inmates—inform whether immediate release would be consistent with those factors.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Compassionate Release (Doc. No. 67) will be denied. An appropriate Order follows.